IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

NASKEH HABIBI,

           Plaintiff,

v.

WELLS FARGO BANK,

           Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Naskeh Habibi ("Plaintiff"), by and through her attorneys, **HKM Employment Attorneys LLP**, hereby files her Complaint against Defendant Wells Fargo Bank ("Defendant"), as follows:

## PARTIES

1. Plaintiff is an individual who is a resident and domiciliary of Oregon.

2. Defendant Wells Fargo is a corporation with a principal office located at 101 N. Phillips Avenue, Sioux Falls, SD 57104, United States. At all relevant times, Defendant was an "employer" within the meaning of CADA, C.R.S. § 24-34-401.

## JURISDICTION AND VENUE

3. Plaintiff brings this action under the Colorado Anti-Discrimination Act, as amended, Colo. Rev. Stat. § 24-34-402, et seq. ("CADA"). Plaintiff additionally raises other employment-related claims under state common law.

4. Jurisdiction is proper under 28 U.S.C. §§ 1332(a)(1), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5. Venue is proper under 28 U.S.C. 1391(a)(2) because a substantial part of the events or omissions giving rise to this action occurred in Colorado.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

6. Plaintiff incorporates all the paragraphs of this Complaint as though fully and separately stated herein.

7. Plaintiff filed her Charge of Discrimination Number E20160059 with the Colorado Civil Rights Division for race and national origin discrimination and retaliation on July 27, 2015. Plaintiff was issued a Notice of Right to Sue.

8. Plaintiff has met all administrative prerequisites prior to filing this action.

## GENERAL ALLEGATIONS

9. Naskeh Habibi, an Iranian-American professional woman, worked for Wells Fargo from January 23, 2012 to January 27, 2015. She was paid a salary of $69,000 (plus commission or bonus) and satisfactorily performed the duties of Business Development Officer (BDO).

10. Plaintiff was subjected to sexual harassment, retaliation and a hostile work environment due to the behavior displayed by the following team members: District Manager Brandon Dastrup, Area President Ryan Stephens, and Business Acquisition Manager Philip Pinelli.

11. Between January 23, 2012 and June 1, 2014, Dastrup made Plaintiff feel uncomfortable by making inappropriate comments to her, including but not limited to the following examples:

   a. "Pretty girls do well in banking."

   b. "You have no idea how bad I want to fuck you."

   c. "When the investigator calls you, you are to only say nice things about Jennifer Howard if you want to keep your job. You need to learn to play the politics game because you're not very good at it."

   d. "Well are you a terrorist?"

12. Dastrup had not only made inappropriate advances and sexually charged comments to Plaintiff but also previously pursued sexual relationships and made inappropriate comments with other Wells Fargo employees in violation of the Wells Fargo's employee handbook, including but not limited to the following examples:

   a. Dastrup told Store Manager Vaughan Gibbs that Plaintiff had gotten "touchy feely" with Dastrup at a recognition event. Mr. Gibbs also told Plaintiff that Mr. Dastrup said she had tried to "get with" him. These remarks had a sexual

    connotation. Gibbs told Plaintiff, "I know Brandon [Dastrup] is a sleaze bag because he's slept with a lot of [team members]."

  b. Upon information and belief, Dastrup pursued a sexual relationship with another Wells Fargo employee, Maxing Czop, who Dastrup managed.

  c. Upon information and belief, Dastrup pursued an unwanted sexual relationship with another Wells Fargo employee, Sophia Holgain. Upon information and belief, he also engaged in inappropriate activities as manager to pursue same.

  13. When Plaintiff had only been working at the bank for 3 months, Dastrup again showed a disregard Wells Fargo's sexual harassment policy by cornering Plaintiff alone to make comments to her about her work performance. As she sat at the Briargate drive through teller window and was conversing with a customer about a credit card application Dastrup stood behind a wall listening to her conversation until the customer drove away. Then came out from behind the wall, stood next to Plaintiff and complimented her on how she spoke to the customer. He said, "You're not going to be a teller for long because pretty girls do well in banking." Dastrup was Plaintiff's District Manager at this time.

  14. Then while Plaintiff was still a Banker and Dastrup was the District Manager he again violated Wells Fargo's sexual harassment policy and the conflict of interest of a personal relationship at work policy. Dastrup repeatedly created inappropriate company outings that were of a social nature and which he told his employees they were required to attend. One such outing was at a bar called Dublin where he specifically told Plaintiff she had to be there. At this function the group shared tapas and had alcoholic beverages in a loud bar setting. After Dastrup had a few drinks, he leaned over to Plaintiff and said, "You have no idea how bad I want to fuck you." Plaintiff was so upset by this comment she immediately got up and found Paul Hanneman to tell him what had happened and told him she was leaving. She walked about of the bar, left her car in the parking lot and walked home. The next day she was terrified at the possibility of facing Dastrup so she called the acting branch manager, Nick Moser and told him she couldn't come in because she was sick. He approved her sick day however after that Dastrup called her directly and told her she had 30 minutes to get to work and implied if she did not come in she would lose her job.

  15. While Plaintiff was an Assistant Manager at the Garden of the Gods branch she properly reported harassment by following the guidelines in the Wells Fargo employee handbook; however, her action was met with threats of losing her job from Dastrup, a clear violation of Wells Fargo's nonretaliation policy.

  16. Brianna Tennant was crying and upset reported to Plaintiff that she was repeatedly being called "a bitch" by Jennifer Howard, the Mortgage Manager and could not take the abusive behavior any longer. Plaintiff reported it to the mortgage supervisor Ms. Young. The next day Dastrup came in to her branch to speak with her, was very angry, told her an investigation had been opened and said, "When the investigator calls you, you are to only say nice things about Jennifer Howard if you want to keep your job. You need to learn how to play the politics game because you're not very good at it."

17. Dastrup publicly violated Wells Fargo harassment policy based on Plaintiff's race at a Red Cross event. Dastrup mandated Plaintiff's attendance at the volunteer event hosted by the Red Cross. The Red Cross coordinator made offensive and upsetting comments to Plaintiff upon learning that she is of Iranian descent, she asked, "Did you fly in on a magic carpet?" and asked "Are you a terrorist?" Dastrup and other Wells Fargo team members observed the interaction. Plaintiff was offended and wanted to leave; however, Dastrup directed that Plaintiff remain at the event until 6:00 p.m. as scheduled, even saying to Plaintiff "Well are you a terrorist?"

18. Plaintiff informed Recruiter Joe Camarena about the comments that were made at the Red Cross event. He contacted Human Resources on Plaintiff's behalf, and she later spoke with an HR Advisor. Dastrup was annoyed that the issue had been escalated to HR. He told Plaintiff he had already apologized for the Red Cross incident and that Plaintiff "needed to move past it." He remarked that thanks to his assistance, Plaintiff would be getting a promotion to BDO. Plaintiff perceived this remark to mean she should drop the issue or she may not get the promotion.

19. After her promotion, Dastrup spoke poorly about Plaintiff to Stephens, and Stephens questioned Plaintiff about the situation. Plaintiff said Dastrup had been very inappropriate with her and that is why she sought the new position in business banking.

20. In retaliation for spurning his advances, Dastrup influenced Plaintiff's former retail banking peers to be negative toward Plaintiff. Consequently, Plaintiff did not receive the support and cooperation needed from her team. In November 2014, Stephens conveyed to the retail stores Plaintiff supported that he did not want her in his stores. As a result, the referrals Plaintiff relied on stopped being directed to her. Upon information and belief, Stephens took this retaliatory action because he had been influenced by Dastrup.

21. As a result of the ongoing negativity created by Dastrup and Stephens about Plaintiff's performance in the BDO role, Pinelli was influenced to initiate a Formal Warning delivered to Plaintiff via email on December 24, 2014. The warning was retaliatory because Plaintiff had expressed concerns about Dastrup. Before the delivery of this corrective action, no issues had ever been raised with Plaintiff about her performance.

22. After Stephens announced that Plaintiff was not wanted in his stores, and after Plaintiff had been placed on corrective action, Pinelli told Plaintiff that she could continue to be the BDO for the stores she had supported prior to Stephens' announcement. Plaintiff feared that she would not be successful in supporting the stores because of the negative perception perpetuated by Dastrup and Stephens.

23. On December 30, 2014, Plaintiff met with ER consultant Patty Miller to report the harassment and regarding strategies for handling this untenable situation but no advice was offered. Consequently, Plaintiff was constructively terminated on January 27, 2015 due to the hostile work environment.

## FIRST CLAIM FOR RELIEF
### (Discrimination in Violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301, et seq. as to Defendant Wells Fargo)

24. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

25. Defendant subjected Plaintiff to sexual harassment and less favorable terms and conditions of employment based on her sex/national origin/race and Wells Fargo's perception of Plaintiff's sex/national origin/race, including, but not limited to, by: subjecting her to sufficiently severe or pervasive harassment based on her sex/national origin/race so as to alter the conditions and terms of her employment; condoning or tolerating such harassment and failing to act to protect Plaintiff after she reported the same; retaliating against Plaintiff and subjecting her to less favorable terms and conditions of employment by imposing heightened and/or disproportionate discipline; and constructively terminating Plaintiff.

26. Plaintiff registered a complaint regarding the harassment with the appropriate authority at her workplace and Wells Fargo failed to conduct a reasonable investigation of the complaint and then failed and refused to take prompt remedial action to protect Plaintiff from further harassment and retaliation.

27. Further, Defendant Wells Fargo denied Plaintiff of a career opportunity because of her refusal of Dastrup's sexual advances and or her protected status.

28. Defendant's above-described conduct constituted discrimination in violation of CADA.

29. Furthermore, Defendant's illegal actions against Plaintiff, including the harassment by Plaintiff's supervisors, were aimed at Plaintiff because of her sex/national origin/race, resulting in adverse impacts to the terms and conditions of Plaintiff's employment and further subjecting Plaintiff to harassment and a hostile work environment.

30. Defendant's conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

31. At the time the above-described conduct occurred, including harassment of Plaintiff by Plaintiff's supervisors, and as a result of such conduct, Plaintiff believed her work environment to be hostile or abusive.

32. In unlawfully discriminating and retaliating against Plaintiff, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under law, thereby necessitating the imposition of exemplary damages.

33. As a direct and proximate result of Wells Fargo's actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and

inconvenience and she is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## SECOND CLAIM FOR RELIEF
### (Retaliation in violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301, et seq. as to Defendant Wells Fargo)

34. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

35. Plaintiff participated in statutorily protected activity by opposing unlawful practices under CADA, including discrimination and harassment based on Plaintiff's protected status.

36. As a result of Plaintiff's protected opposition to discrimination and harassment, Wells Fargo retaliated against her by subjecting her to less favorable terms and conditions of employment as described in this Complaint, including imposing heightened discipline against Plaintiff, condoning or tolerating harassment, and constructive termination.

37. In unlawfully discriminating and retaliating against Plaintiff, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under law, thereby necessitating the imposition of exemplary damages.

38. As a direct and proximate result of Wells Fargo's above-described conduct, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience, and she is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## THIRD CLAIM FOR RELIEF
### (Negligence Claims)

39. Plaintiff hereby incorporates all the paragraphs of this Complaint as though fully incorporated herein.

40. Defendant's supervisor repeatedly subjected Plaintiff, a subordinate, to unwelcome and inappropriate comments and advances. When those advances were refused, Plaintiff was subjected to behavior by Plaintiff's supervisors and others that were inappropriate and unprofessional.

41. The conduct of Defendant's supervisors caused her to feel anxiety, nervous shock, fear, anxiety, shame, humiliation, embarrassment, worry, impairment of the quality of life, and indignity.

42. Defendant is directly liable for its negligent infliction of emotional distress committed against Plaintiff.

43. Defendant is also liable for the negligent infliction of emotional distress committed against Plaintiff by Defendant's supervisors pursuant to Defendant's negligence in hiring, supervising, and/or retaining its catering manager or, in the alternative, pursuant to the doctrine of *respondeat superior.*

44. Defendant had a duty to vet and supervise its supervisors.

45. Defendant was negligent in hiring and/or supervising its supervisors.

46. Defendant's lack of supervision allowed Defendant's supervisor(s) to use and abuse the power held over Plaintiff, including by subjecting her to negligently inflicted emotional distress.

47. Defendant was on notice or reasonably should have been on notice that its supervisor(s)' conduct created a risk of harm to its other employees, including Plaintiff. Defendant's negligence in addressing the behavior, and retaining the supervisor(s), condoned the actions and gave free reign to commit tortious conduct toward Plaintiff. With proper supervision and investigation, Defendant would have known it should not have retained its supervisor(s).

48. Defendant's supervisor(s) were management employee(s) of Defendant.

49. Defendant's supervisor(s) had broad authority within the position(s).

50. Defendant's supervisor(s) used broad authority to negligently inflict emotional distress on Plaintiff in the course of the supervisor(s) work for the benefit of Defendant.

51. As a result of Defendant's negligence in hiring, supervising, and/or retaining its supervisor(s), Plaintiff has been damaged in amounts to be proven at trial.

52. As a result of Defendant's aforementioned acts and omissions, Plaintiff has been damaged in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant and prays for:

A. Compensatory damages;

B. Statutory penalties as permitted by law;

C. Reasonable attorneys' fees and the costs of this action as permitted by law;

D. Statutory prejudgment interest; and

E. Such other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury.

Dated this 3rd day of January, 2017.

**HKM Employment Attorneys LLP**

*/s/ Claire E. Munger*
Claire E. Munger
Shelby Woods
730 17th Street, Suite 900
Denver, CO 80202
720-668-8989
cmunger@hkm.com
swoods@hkm.com

*Attorneys for Plaintiff*